IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

MONSERRATE PÉREZ-
TRAVERSO, ET AL.,

Plaintiff,

v.

HOSP. COMUNITARIO BUEN
SAMARITANO, ET AL.,

Defendant.

CIV. NO.: 12-2263(SCC)

## MEMORANDUM AND ORDER

On March 17, 2014, we issued an Opinion and Order dismissing Plaintiffs' EMTALA claims. Docket No. 225. Because those were the only federal question claims in the complaint, and because complete diversity was lacking, we also dismissed Plaintiffs' supplemental state-law claims. *Id.* Plaintiffs have now filed a motion requesting reconsideration of that Order. Docket No. 227. As to the EMTALA claims, however, we deny Plaintiffs' motion; we are confident in our previous decision, and Plaintiffs' arguments on reconsideration

consist largely of attempts to have us consider evidence that it failed to timely bring to our attention. However, and though we find that Plaintiffs' may have waived the argument, we conclude that exercising jurisdiction over the two diverse plaintiffs is the most just course; we therefore grant the motion as to those plaintiffs' state-law claims. Further, we request that the parties brief us on whether we should also reconsider whether to exercise supplemental jurisdiction over the remaining plaintiffs' state-law claims.

## I.   The Hospitals' Duty to Stabilize

In our Opinion and Order, we concluded that Plaintiffs failure-to-stabilize claims must fail because there is no evidence to suggest that, at the time each hospital discharged Pérez, it believed she had an emergency medical condition. As to both hospitals, Plaintiffs' contention is that this conclusion was in error because doctors at both hospitals "considered" that Pérez might have an arterial occlusion. That may be so, but in each case Pérez was discharged with a different, non-emergency diagnosis. Both the statute and the caselaw make clear that for liability to attach on a failure-to-stabilize theory, the hospital must "actually detect the emergency medical condition." *Lopez-Soto v. Hawayek*, 175 F.3d 170, 175 (1st Cir. 1999). Because no

evidence of "actual detect[ion]" exists in the record—indeed, Plaintiffs' remaining claims are premised on the fact that the hospitals *did not* detect the condition—summary judgment in favor of the hospitals was proper on the failure-to-stabilize claims.

## II.  Buen Samaritano's Duty to Screen

In our Opinion and Order, we concluded that any failure-to-screen claim with respect to Buen Samaritano had to fail because, by the time her alleged emergency condition arose, Pérez had already been admitted to the hospital. It is not entirely clear whether Plaintiffs object to this conclusion; in any case, they present no argument as to why it was incorrect. As such, we will not reconsider it.

## III.    Concepción's Duty to Screen

First of all, there is evidence in the record that Concepción's physicians complied with each step of the screening that Plaintiffs' expert says was necessary. They took a history;[1] performed a physical examination; reached preliminary and differential diagnoses; and performed the tests they considered necessary. Plaintiffs' claims go to the correctness of the physi-

---

**1.**   In her deposition, Dr. Montalvo confirmed that when she examined Pérez, she knew of Pérez's history of hypertension and diabetes.

cians' actions, not whether they complied with a checklist. The major error, as we noted in our Opinion and Order, was that Dr. Montalvo seems to have misidentified cyanosis as ecchymosis, an error that influenced the tests she chose and the diagnoses she considered. This is (alleged) negligence, not a failure to screen.

As to the matter of peripheral pulses, we repeat what we said before: nothing in Plaintiffs' filings tell us *why* such a comparison was called for. We would not, moreover, deem admitted the proposed fact that such a comparison was necessary. That fact was based on Plaintiffs' expert report, which offers the conclusion without explanation. *See UpdateCom, Inc. v. FirstBank P.R., Inc.*, Civ. No. 10-1855(SCC), 2014 WL 346436, at *4 (D.P.R. Jan. 30, 2014) (explaining that, at the summary judgment stage, courts may not rely on expert reports that fail "to state the basis and reasoning behind their opinions"). And as to the doppler test, it was undoubtedly *Plaintiffs*' duty to come forward, at summary judgment, with evidence that the hospital could actually perform it. Plaintiffs failed to do so, and we will not allow them to submit new evidence on reconsideration. Plaintiffs, moreover, again fail to cite any case law in support of their argument that a hospital

must, to comply with its duty to screen, transfer patients who need tests that the hospital cannot provide. As we previously noted, such a holding contradicts the express language of the statute and the decisional law in this Circuit.

Finally, and perhaps most importantly, the evidence in this case, taken all together, suggests that Concepción's physicians did diligently attempt to determine the source of Pérez's foot pain. The evidence suggests that they might have erred in this attempt, but we still see no evidence on which Plaintiffs could premise an EMTALA claim. As such, we deny reconsideration on this ground.

## IV.    Diversity Jurisdiction

Finally, Plaintiffs argue that even if we dismiss their federal causes of action, diversity jurisdiction exists as to two plaintiffs, Ruben and Roberto Lorenzo. Implicit in Plaintiffs' motion is a request that we dismiss only the non-diverse plaintiffs, preserving diversity as to Ruben and Roberto. Though Plaintiffs have probably waived this argument, we think that considerations of fairness and justice, as well as judicial economy, weigh in favor of exercising jurisdiction.

First, though, waiver. The basis for separating the diverse from the non-diverse plaintiffs would be a claim of misjoinder

under Rule 21, but Plaintiffs never raised such an argument before their motion for reconsideration. In their motions for summary judgment, the hospitals explicitly argued that this case was premised on federal question jurisdiction. If we dismissed the EMTALA claims, the motions argued, we should decline to extend supplemental jurisdiction over the state-law claims. These arguments made sense, too, as at the time the motions were filed, complete diversity was unquestionably lacking.[2] Moreover, in opposing the motions for summary judgment, Plaintiffs failed to raise the matter of partial diversity jurisdiction. Instead, Plaintiffs argued *only* that we should exercise supplemental jurisdiction over the state-law claims. As such, we understood the parties to be in agreement that this court had subject-matter jurisdiction solely on the basis of the EMTALA claims. Moreover, when the hospitals requested to file these late jurisdictional motions for summary judgment, we only permitted them to do so based on this same understand-

---

**2.**   Plaintiffs make much of the fact that the complaint lists diversity as a basis for jurisdiction. We see this as of little relevance, however, because at the time the complaint was filed, diversity was plainly lacking, and the parties' subsequent conduct confirmed that they were operating under the assumption that EMTALA was the basis for federal jurisdiction.

ing—an understanding that Plaintiffs failed to disabuse us of.[3]
We could therefore deem Plaintiffs' misjoinder arguments
waived. *See Ziegler v. Akin*, 261 F.2d 88, 91 (10th Cir. 1958)
("Misjoinder is waived by failure to make seasonable objec-
tion."); *see also City of Syracuse v. Onondaga Cnty.*, 464 F.3d 297,
308 (2d Cir. 2006) (deeming waived a party's Rule 21 argu-
ment).

   But we will not do so. Rule 21 gives to the Court the power
to add and drop parties on its own motion "at any time, on just
terms." FED. R. CIV. P. 21; *see also Walgreen Co. v. Networks–USA
V, Inc.*, Civ. No. 12-1317, 2012 WL 6591810, at *7 (N.D. Ill. Dec.
17, 2012) (refusing to deem waived a party's Rule 21 argument
because of Rule 21's "unequivocal[]" statement that the court
may add or drop parties at any time). We note that the case
law suggests that the proper course in a case like this—at least
where the plaintiffs have actually asked for the relief—is to
sever any dispensable non-diverse parties from the litigation,
preserving jurisdiction over the diverse parties. *See, e.g., Trans*

---

**3.**   Neither Plaintiffs' motion to strike the summary judgment motions, nor
their opposition to the hospitals' oppositions to the motion to strike,
made any mention of diversity jurisdiction as an alternate basis for
some of Plaintiffs' claims remaining in this Court.

*Energy, Inc. v. EQT Production Co.*, — F.3d — , 2014 WL 703754, at * (4th Cir. Feb. 25, 2014) (concluding that because the non-diverse plaintiff was dispensable, it was "an appropriate case in which to exercise our power under Rule 21 to dismiss [the non-diverse party] from the suit and preserve diversity among the remaining parties"); *Anrig v. Ringsby United*, 603 F.2d 1319, 1325–26 (9th Cir. 1978); *Kafaru v. Burrows*, Civ. No. 07-1520, 2008 WL 155406 (D. Conn. Jan. 9, 2008). Here, none of the plaintiffs are indispensable, and we can see no prejudice that any party would incur by dismissing the jurisdictional spoilers and allowing the case to go forward as to the diverse plaintiffs. This is especially true given that this case is so old and that it is trial-ready.

## V.  Conclusion

For the reasons stated above, we GRANT the motion for reconsideration with respect to the two diverse plaintiffs, and we DENY the motion with respect to the EMTALA claims. The final judgment previously entered will, therefore, be VA-CATED, and an amended judgment will be entered in its place.

Before that amended judgment will be entered, however, we will need the parties to brief one final matter. As noted above, we have concluded that the fairest course is to permit

the diverse plaintiffs to go forward with their state-law claims. But the diverse plaintiffs' claims mirror in nearly all respects the claims of the non-diverse plaintiffs. We are inclined to think, therefore, that the fairest course would be to reconsider our previous decision not to exercise supplemental jurisdiction, permitting *all* of Plaintiffs' state-law claims to be heard by this Court. In support of this course is the case's age, the fact that discovery is complete and the matter is trial-ready, the claims' similarity, our interest in judicial economy, and the unjustifiably tardy filing of the hospitals' motions for summary judgment. *See Cvallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012) (upholding district court's exercise of supplemental jurisdiction after federal claims had been adjudicated); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (permitting the exercise of supplemental jurisdiction where the dismissal of the federal claims came late in the litigation, after the investment of substantial federal-court resources); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105–06 (2d Cir. 1998). But because the Court is raising this issue *sua sponte*, we believe that the parties should have an opportunity to respond. The parties are given until March 28, 2014, to brief this matter. No extensions of time will be permit-

ted.

 IT IS SO ORDERED.

 In San Juan, Puerto Rico, this 21st day of March, 2014.

   S/ SILVIA CARREÑO-COLL

   UNITED STATES MAGISTRATE JUDGE