IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MONSERRATE PÉREZ-TRAVERSO, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>HOSP. COMUNITARIO BUEN SAMARITANO, INC., ET AL.,<br><br>Defendants. | CIV. NO.: 10-2263(SCC) |

**MEMORANDUM AND ORDER**

    Plaintiffs in this case are Monserrate Pérez-Traverso, who claims to have been harmed by the actions of the defendant hospitals and doctors, and her children. *See* Docket No. 100. As this case was poised for trial, the defendant hospitals filed, without leave, a tardy motion for summary judgment as to Plaintiffs' EMTALA claims. *See* Docket No. 213. Nonetheless, we considered the motions and granted both, thus dismissing Plaintiffs' only federal causes of action. *Perez-Traverso v. Hosp.*

*Comunitario Buen Samaritano* (hereinafter, "*Perez-Traverso I*"), Civ. No. 10-2263(SCC), 2014 WL 1017885, at *4 (D.P.R. March 17, 2014). Plaintiffs moved for reconsideration. *See* Docket No. 227. In addition to arguing that their EMTALA claims were improperly dismissed, Plaintiffs argued that two of the plaintiffs were diverse, and, at a minimum, their state-law claims should be allowed to proceed to trial. *See id.* at 2–3. Though we rejected Plaintiffs' EMTALA arguments, we agreed that the fairest course was to let the diverse plaintiffs' claims proceed to trial. *Perez-Traverso v. Hosp. Comunitario Buen Samaritano* (hereinafter, "*Perez-Traverso II*"), Civ. No. 10-2263(SCC), 2014 WL 1155346, at *3 (D.P.R. March 21, 2014) (noting our "power to add and drop parties on [our] own motion at any time, on just terms," and holding that the diverse plaintiffs should be severed from the non-diverse plaintiffs so as to save federal jurisdiction). Recognizing that trial was thus inevitable in this case, we also *sua sponte* raised the question of reconsidering our previous decision not to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *Id.* (noting that "the diverse plaintiffs' claims mirror in nearly all respects the claims of the non-diverse plaintiffs"). We ordered the parties to brief us on supplemental jurisdiction,

and after considering their filings we conclude that exercising supplemental jurisdiction over all of the plaintiffs' state-law claims is proper.

The principal jurisdictional hook for this case was Plaintiffs' EMTALA claims. Plaintiffs' state-law claims were here under our supplemental jurisdiction. *See* 18 U.S.C. § 1367. As a general matter, our dismissal of Plaintiffs' federal claims would lead to a dismissal of their state-law claims as well.[1] *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well

---

**1.** When we asked the parties to brief us on supplemental jurisdiction, we did so by direct reference to cases where the court had original federal question jurisdiction. *See Perez-Traverso v. Hosp. Comunitario Buen Samaritano*, Civ. No. 10-2263(SCC), 2014 WL 1155346, at *(D.P.R. March 21, 2014) (citing *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012))); *see also id.* (considering the "reconsider[ation]" of our previous decision not to extend supplemental jurisdiction over state-law claims after dismissing the federal hook). This makes sense, as the supplemental jurisdiction statute severely limits the scope of supplemental jurisdiction where original jurisdiction is based on diversity. *See* 28 U.S.C. § 1376(b). Nonetheless, Hospital Comunitario Buen Samaritano chose to limit its brief to the propriety of a court's "exercise of supplemental jurisdiction when the basis for federal jurisdiction is diversity." Docket No. 231, at 4. While Buen Samaritano's arguments in this regard are largely correct, they are not relevant to our reasoning here.

before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). However, in certain cases "a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of the federal claims." *Id.* Indeed, the First Circuit has explained that the general rule "is not compelled by a lack of judicial power"; instead, it is a recognition that in the typical case, concerns of judicial economy, convenience, comity, and fairness militate in favor of declining jurisdiction." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, a balancing of the equities weighs strongly in favor of retaining jurisdiction. We begin with the fact that this case is quite old. The lead plaintiff's injuries happened more than four years ago, and this case was itself filed in 2010. To dismiss the state-law claims now would only further delay Plaintiffs' chance to have their day in court. Such delay seems especially unfair given that discovery in this case has been complete for some time, and a trial could be held just as soon as an appropriate date can be agreed upon. Further, the lead plaintiff has been diagnosed with cancer, *see* Docket No. 230, at 7, and a decision to dismiss her claims and force her to refile in state court may permanently deprive her of an opportunity for trial.

We find it of note, too, that the defendant hospitals filed their motions for summary judgment six months after dispositive motions were due—without even requesting leave or explaining the motions' lateness. We would have been justified in summarily striking the motions, and the hospitals might have been going to trial on the EMTALA claims now too.

Additionally, concerns about judicial economy and comity both weigh in favor of our retaining jurisdiction. First, as we have said, if we declined to exercise supplemental jurisdiction we would nonetheless exercise diversity jurisdiction over some of the plaintiffs' claims. But because all of the plaintiffs' claims are grounded in the same events, a decision not to exercise supplemental jurisdiction would require an unfortunate duplication of effort.[2] Plus, the resources that have already been expended here would be for naught. Moreover, we are familiar with this case, having dealt with it for some time and in great detail; there is no reason to require another judicial officer to familiarize herself with this case when we could more easily retain jurisdiction over it. As for comity, the state-law

---

2. Likewise, if we dismissed this whole case, the diverse plaintiffs would probably refile in federal court, while the non-diverse plaintiffs would re-file in state court. Duplication of effort would occur in either case.

claims amount to a straightforward medical malpractice suit of a sort that this court routinely handles. It presents no complex or novel issues of state law, and so it need not be left to the expertise of a local tribunal.

Finally, we reject Hospital la Concepción's argument that retaining supplemental jurisdiction here would be unfair. According to Concepción, Plaintiffs want to be in federal court because awards are much higher here, where plaintiffs are entitled to a jury, than in state court, where they are not. *See* Docket No. 229, at 18. We have no doubt that Concepción is accurate in its assessment of Plaintiffs' motivations, but we see no unfairness to the defendants in that fact. Indeed, granting Defendants the relief they seek has the potential to cause at least as much prejudice to Plaintiffs. Puerto Rico, after all, is the only jurisdiction in the United States that does not afford a right to jury trials in civil cases. *See Echevarria v. Robinson Helicopter Co.*, 824 F. Supp. 2d 275, 283 n. 8 (D.P.R. 2011) (noting that "Puerto Rico is the only United States jurisdiction in which its American citizens are not afforded any right to trial by jury in civil cases before local courts"). The best that can be said for Concepción's fairness argument is that it is a wash; in fact, it

may well militate further in favor of retaining jurisdiction.³

At the end of the day, the First Circuit's precedents make clear that whether or not we exercise supplemental jurisdiction

---

**3.** In a somewhat related context, the First Circuit rejected a public policy challenge to a forum selection clause where the challenge was based on Puerto Rico's refusal to allow juries in civil cases. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 23–24 (1st Cir. 2009). That opinion, however, relied largely on *Minneapolis & St. Louis R.R. Co. v. Bombolis*, which refused to incorporate the Seventh Amendment against the states on the theory that the Bill of Rights was "not concerned with state action." *Bombolis*, 241 U.S. 211, 217 (1916), *cited by Rivera*, 575 F.3d at 23. Since *Rivera*, however, the Supreme Court has questioned the continuing vitality of its early incorporation precedents. In *McDonald*, it characterized its later precedents as having "moved in th[e] direction" of total incorporation of the Bill of Rights. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3034 (2010). It explained that post-*Bombolis* precedent "shed any reluctance to hold that rights guaranteed by the Bill of Rights met the requirements for protection under the Due Process Clause," and it specifically rejected reasoning—employed in *Bombolis*—that would permit "different standards 'depending on whether the claim was asserted in a state or federal court.'" *Id.* at 3035 (quoting *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964)). *Bombolis*, then, was decided long before the current era using discarded legal principles. *See id.* at 3035 n.13; *cf. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." (internal quotations omitted)). Whether *Bombolis*—and therefore *Rivera*—remain good law is up for debate. Nonetheless, because this matter is unsettled, we have not given it much weight in our analysis.

is a matter left to our discretion based on our assessment of case-specific factors. *See Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 564 (1st Cir. 1997) ("In a federal question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion."). Here, having considered the merits of each side's position, we conclude that the best course is to continue to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *Cf. King v. Friends of Kelly Ayotte*, 860 F. Supp. 2d 118, 129 (D.N.H. 2012) (exercising supplemental jurisdiction after dismissing federal claims); *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 266 n.8 (D.R.I. 2009) (exercising supplemental jurisdiction after dismissing federal claims where the "litigation had matured well beyond its nascent stages" and the court was "familiar with the underlying facts" (internal quotations omitted)); *Metlife Capital Corp. v. Water Quality Ins. Syndicate,* 198 F. Supp. 2d 97, 105–06 (D.P.R. 2002) (exercising supplemental jurisdiction after dismissing federal claims where the court had expended significant resources on the case, substantial discovery had been conducted, and the case was very old); *Negron-Vazquez v. Colon-Flores*, Civ. No. 91-

1307(DRD), 1996 WL 482961, at *5 (D.P.R. Aug. 14, 1996) (exercising supplemental jurisdiction, despite the dismissal of the federal claims, where the case was trial-ready and had been on the court's dockets for years); *see also Smith v. Jenkins*, 732 F.3d 51, 61 (1st Cir. 2013) (approving, without further comment, the trial court's retention of supplemental jurisdiction after no federal claims remained); *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 74 (1st Cir. 2013) (finding no error in the district court's decision to retain supplemental jurisdiction absent any further federal claims).

In the alternative, however, we would permit the two diverse plaintiffs to maintain their claims in this court. We have explained this reasoning previously, *see Perez-Traverso II*, 2014 WL 1155346, at *2–3, and we reiterate it. Nonetheless, because we made that ruling without the benefit of Defendants' opposition, we have carefully reviewed their filings on the matter and we address their objections now.

First, Concepción argues that diversity jurisdiction is unavailable because the admittedly diverse plaintiffs have failed to plead that they meet the jurisdictional amount in controversy, $75,000. Frankly, we are confused by this argument. The Fourth Amended Complaint clearly pleads damages

in the amount of $250,000 for each of the diverse plaintiffs, easily satisfying the jurisdictional threshold. *See* Docket No. 100, ¶ 68. Second, the defendants argue that, notwithstanding the sufficient pleading, the diverse plaintiffs cannot hope to *actually* meet the jurisdictional threshold. According to the First Circuit, a plaintiff's jurisdictional averment controls "as long as that amount is asserted in good faith." *Barrett v. Lombardi*, 239 F.3d 23, 30 (1st Cir. 2001). However, there is a latent element of objective good faith in this equation: when there is a legal certainty that the plaintiff could not recover at least $75,000, dismissal is warranted. *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 4 (1st Cir. 2011). Defendants suggest that it is a legal certainty that the diverse plaintiffs will not meet the jurisdictional threshold. To this end, Defendants offer evidence that, since Pérez's accident, the diverse plaintiffs have not been in frequent contact with her. Seeing this, we do find it *unlikely* that the diverse plaintiffs will recover more than $75,000, but we cannot say that this is true to a legal certainty. Indeed, we have seen relatives awarded substantial recoveries for arguably less serious injuries to their loved ones. Finding that the jurisdictional averment was made in good faith, then, we reject this argument. Finally, Concepción argues that "there is no

scintilla of evidence that has been presented by plaintiff during discovery and in their opposition for summary judgment . . . to sustain" Plaintiffs' state-law negligence actions. Docket No. 229, at 7. To this argument, we need say only that Defendants had the opportunity to file motions for summary judgment as to Plaintiffs' negligence claims and chose not to do so. We thus find it unremarkable that Plaintiffs have not opposed arguments that were never raised. This argument is rejected, too.

We conclude that the exercise of supplemental jurisdiction over Plaintiffs' state-law claims is warranted, notwithstanding the dismissal of their only federal claims. In the alternative, we would sever the claims of the diverse plaintiffs, Ruben and Roberto Lorenzo, and try them on the basis of diversity jurisdiction while dismissing the remaining plaintiffs.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of April, 2014.

    S/ SILVIA CARREÑO-COLL

    UNITED STATES MAGISTRATE JUDGE